Seven Canal Place Corporation v. Commissioner.
Seven Canal Place Corp. v. Commissioner
Docket No. 87784.
United States Tax Court
T.C. Memo 1962-307; 1962 Tax Ct. Memo LEXIS 4; 21 T.C.M. (CCH) 1661; T.C.M. (RIA) 62307; December 31, 1962
William M. Kufeld, Esq., 60 E. 42nd St., New York, N. Y., for the petitioner. Warren S. Shine, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency of $2,370 in income tax for the calendar year 1955. The sole issue for our determination is whether respondent's determination that compensation to the officers of petitioner was excessive and unreasonable is justified. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner is a corporation organized under the laws of the State of New York in 1941. Until April 2, 1948, petitioner was known as Carpet Servicing Co., Inc., when its name was changed, pursuant to section 40 of the General Corporation Law of the State of New York. Petitioner *5 filed its income tax return for the calendar and taxable year 1955 with the then district director of internal revenue, Upper Manhattan district, New York. Petitioner's 80 shares of outstanding common stock were owned by Herbert K. Beshar (hereinafter called Herbert) and Edward H. Beshar (hereinafter called Edward) as follows: Herbert
69 shares
Edward
11 shares Petitioner owns two parcels of real property, which it acquired in 1941, bearing the addresses 5 Canal Place and 2564-6 Park Avenue, Bronx, New York. During the years 1947 through 1955, the following were petitioner's officers: Herbert
President and treasurer
Edward
Vice-president
Ella A. Beshar
Herbert's wife
(hereinafter
called Ella)
Secretary
The building known as 5 Canal Place is a 5-story commercial building having approximate dimensions of 90feet X 100feet and containing approximately 45,000 square feet of rentable area. At all times since 1941 it has been only fully occupied by two corporate tenants, A. Beshar & Co., Inc. (hereinafter called Beshar), and Carpet Servicing Co., Inc. (hereinafter called Carpet), a corporation formed after petitioner's name was changed. The *6 stock of Beshar was held in 1955 as follows: Stockholder
Shares
Herbert
100 1/2
Edward
10
Anna A. Beshar (Mother
of Herbert and Edward)
49 1/2
Ella
40
Beshar owned all of the outstanding stock of Carpet. Petitioner reported rental income of $18,900 from its two corporate tenants on its books and on its income tax return for the taxable year 1955. This rental income was not actually received by petitioner, but, in accordance with its practice, the income was shown in an accounts receivable account which covered only intercompany accounts with the related tenants. At the end of the taxable year at issue, petitioner's accounts receivable intercompany accounts showed a total amount of $50,846.90, which reflected accumulated rents from its tenants less certain charges such as fuel, maintenance, etc. Of the rental income of $18,900, $6,900 was attributable to Beshar and $12,000 to Carpet. These rentals were the same for the years 1952, 1953, and 1954. For at least 3 years prior to 1952, the rentals were $16,800 a year from Carpet and $8,400 a year from Beshar. 2564-6 Park Avenue is a 3-story commercial building having approximate dimensions of 65feet X 108feet *7 and containing about 23,000 square feet of rentable area. During the latter part of the year 1955, petitioner received $9,916 in rent from an unrelated tenant of this building. The Park Avenue building was vacant during the first 5 months of 1955. At first, Herbert attempted to rent the building by personally advertising in the Sunday newspaper and personally answering the calls, interviewing the prospective tenants, and showing the building. After 2 months, Herbert sent a circular to approximately 500 industrial real estate brokers listing the desirable qualities of the building. A tenant was procured by a real estate broker for which petitioner paid a commission of $1,536.66. The lease was signed on May 26, 1955, and the tenant commenced occupancy on June 1, 1955. Herbert was primarily engaged in the rug and carpet business during the year in issue, as he had been ever since 1920. He was the chief executive officer of Beshar, which had a staff of at least 15 employees, and Carpet, which had separate employees. Herbert devoted approximately 10 to 15 percent of his working time to the affairs of petitioner. His duties included attempting to rent the vacant building and the normal *8 inspections and maintenance necessary in operating an office or industrial building. These included showing the vacant building to prospective tenants, inspecting both buildings, estimating expenses of repair work in consultation with architects, maintenance of elevators and roofs, supervision of repairs, newspaper and circular advertising, conferences with brokers and prospects, interviewing prospective tenants, inspecting prospective tenants' existing premises and examination of their financial responsibility, conferences with petitioner's attorneys in relation to protests of real estate taxes and other matters, conferences with petitioner's accountants, examination of other buildings for possible investment by petitioner, and related duties. Petitioner has never purchased another building. Edward acted in the capacity of a super-intendent for the buildings when Herbert was not available. Approximately 5 to 10 percent of his time was spent in petitioner's business. His office was located in one of the buildings, and he was in charge of the watchman service for both buildings. Ella worked with Herbert for petitioner in screening tenants, taking care of the insurance and providing *9 for the physical condition and appearance of the buildings. During 1955, Ella maintained a home without the services of a maid. Petitioner has never retained a managing agent to operate the buildings. The accountant that handled the books and records of Beshar and Carpet also kept the books of petitioner. Petitioner also hired an independent watchman's service. The amounts paid as salaries to petitioner's officers from the year 1947 through the year 1955, and the gross income earned by petitioner during each of such years are as follows: Total
Gross
Year
salaries
Herbert
Edward
Ella
income
1947
$ 9,200
$5,000
$2,400
$1,800
$30,252
1948
10,200
5,500
2,700
2,000
32,168
1949
10,200
5,500
2,700
2,000
37,281
1950
12,000
6,600
3,000
2,400
40,351
1951
12,000
6,600
3,000
2,400
37,866
1952
12,000
6,600
3,000
2,400
30,615
1953
12,000
6,600
3,000
2,400
20,849
1954
12,000
6,600
3,000
2,400
24,412
1955
9,400
5,200
2,400
1,800
28,816
Petitioner reported a net income of $4,514.75 on its 1955 corporate tax return and showed an accumulated earned surplus as of December 31, 1954 of $82,019.27. It has *10 never paid any dividends with respect to the taxable year 1955 or any year prior thereto. During 1953, the tenant in the Park Avenue building was the cause of a building violation which created difficulty with the petitioner's insurance rates. In addition, this tenant was insolvent and eventually was evicted. This situation required the expenditure of considerable time and effort on the part of petitioner's officers. The compensation for 1955 was based to some extent upon the figure arrived at upon settling a controversy with respect to deduction for officers' salaries for the years 1951, 1952, and 1953. The officers spent approximately the same amount of time on petitioner's affairs in 1955 as they had in 1951-1953. Expenses, exclusive of Federal income taxes, paid or incurred by petitioner during 1955, were as follows: Officers' salaries
$ 9,400.00
Repairs
431.50
Real estate taxes
3,850.00
New York State franchise tax
275.00
Social Security taxes
168.00
Depreciation
1,894.37
Advertising
116.50
Legal fees
1,261.40
Auditing fees
262.50
Sprinkler and fire alarm
87.00
Elevator maintenance
43.00
Electric service
15.95
Rental commission
1,536.66
Cleaning, repair and misc.
1,520.00
Insurance
1,164.42
Fuel, etc.
1,500.00
Protective services
720.00
Water
35.60
Total
$24,281.90
*11 The amounts paid as salaries to petitioner's officers in 1955 from other corporations were as follows: Beshar
Carpet
Herbert
$25,200.00
$7,000.00
Edward
3,465.00
5,100.00
Ella
3,150.00
1,700.00
In his deficiency notice, respondent determined that "the deduction of $9,400.00 claimed for officers' compensation * * * was excessive and unreasonable to the extent of $7,900.00." A reasonable allowance for compensation for all the personal services actually rendered by all petitioner's officers in 1955 is not in excess of $5,200. Opinion The uncontested evidence demonstrates that the officers actually rendered services necessary to the corporate business. Even the most liberal estimate, however, of the total time actually required to perform all of these duties would not exceed 15 to 20 hours a week. It is thus apparent that the three individuals were dividing the work of a position which at best required one part-time employee. And, although we take full cognizance of Herbert's business experience, a large percentage of the work performed was not of a nature normally requiring the chief executive's attention. There has been no attempt to show the *12 prevailing rates of compensation for similar positions in a comparable business, [1] and the administration of petitioner's affairs was greatly simplified by the fact that two of the three tenants in petitioner's buildings were related corporations. As a result, about one-half of petitioner's rental income was never actually collected but merely shown on an intercompany account receivable and most, if not all, of the real estate expenses were handled on the related corporatisnsx books. Finally, petitioner has never paid a dividend. * * * In a small corporation such as petitioner, * * * the difficulty of drawing the line between what is in fact paid as salary and what part is in the guise of a distribution of profits is apparent. . What constitutes reasonable compensation is purely a question of fact, *13 (C.A. 2, 1951), affirming a Memorandum Opinion of the Tax Court; (C.A. 7, 1961), affirming a Memorandum Opinion of the Tax Court. Reasonable allowances cannot be ascertained with mathematical precision. (C.A. 7, 1946), affirming a Memorandum Opinion of the Tax Court. Our findings reflect the conclusion that $100 a week is the maximum compensation commensurate with the type of work performed and the amount of time and effort required. Petitioner contends that respondent's acquiescence to this compensation upon settling a dispute in a prior year indicates that the amount deducted was reasonable. At best, this is merely evidentiary, see ; , to be considered and weighed with all the evidence. But even if the time and effort expended in the previous years were comparable to the year in issue, it would appear that the duties involved in the prior years called for a higher caliber of work and might accordingly have justified higher compensation. Decision *14 will be entered under Rule 50. Footnotes
1. Even if we take notice of the recommended commission rates of the Real Estate Board of the Bronx, New York, appended to petitioner's brief, the amount which we have found as reasonable is well in excess of twice the suggested maximum commission to which an independent agent would be entitled.↩